961 F.2d 220
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert A. MUNROE; Geraldine Munroe, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 91-9007.
 United States Court of Appeals, Tenth Circuit.
 April 9, 1992.
 
 1
 Before BALDOCK and SETH, Circuit Judges, and BRIMMER, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 BALDOCK, District Judge.
 
 
 4
 In August 1980, Petitioner-appellant Robert A. Munroe,[1] an attorney, and his son, a consulting geologist, incorporated M & M Building, Inc., (M & M) to facilitate the purchase of an office building in their home town of Augusta, Kansas. They each contributed capital and planned on renovating the building and occupying the space on a two-thirds/one-third basis for their respective law and geology practices. After the purchase, M & M obtained financing for the proposed renovation, executing five separate notes from 1981 to 1986. Most of the notes simply refinanced earlier notes and added whatever additional financing was necessary for the continuing renovation. The interest payments on these notes present the primary issue on appeal. Petitioner failed timely to file returns for tax years 1982 to 1985, but, in his delinquent returns filed in January 1987, he claimed deductions for the interest payments made during the earlier four year period. See I.R.C. § 163. The Commissioner disallowed the deductions, contending that they were M & M corporate expenses. Also, the Commissioner assessed I.R.C. § 6651(a)(1) additions to tax for failure to file returns, and § 6653(a)(1) additions to tax for negligent underpayment. The resulting deficiencies and additions to tax totalled $17,404.33.
 
 
 5
 Petitioners challenged the deficiencies and the § 6651(a)(1) addition in tax court, which entered a decision on February 11, 1991, sustaining the deficiencies and additions to tax as determined by the Commissioner. Petitioners appeal, arguing that the interest deductions could only be personal because Petitioner Mr. Munroe actually made the payments and because M & M was not a corporation under the Internal Revenue Code or, alternatively, because M & M transferred the office building to Petitioner Mr. Munroe before the tax years at issue. Also, Petitioners challenge the § 6651(a)(1) additions to tax, arguing reasonable cause for failure to file the returns.[2] Our jurisdiction arises under I.R.C. § 7482, and we affirm.
 
 
 6
 I. The Interest Expense Deductions.
 
 
 7
 I.R.C. § 163(a) provides for a deduction for "all interest paid or accrued within the taxable year on indebtedness." However, it is the burden of the taxpayer to establish the facts necessary to support the deduction; and the deduction applies only to interest payments on indebtedness incurred by the taxpayer, not to voluntary payments on indebtedness incurred by another. See Crouch v. United States, 692 F.2d 97, 99 (10th Cir.1982). In this case, the Commissioner maintains, and the tax court held, that the indebtedness at issue was incurred by M & M.[3] Therefore, the court held that Petitioners' claimed deductions were properly disallowed as voluntary payments on behalf of another. Petitioners concede that the notes were executed in the name of M & M, but they argue that the substance of the transactions reveals that the indebtedness was incurred by Mr. Munroe, not by M & M. As support they first point to factors which indicate that M & M was a mere "dummy" corporation, never owning the building or having the resources to service the debt. Second, and in the alternative, they contend that M & M, even if it was a corporation, transferred title to the building to Mr. Munroe in 1981, before the tax years in issue. This, they argue, indicates that M & M did not actually incur the debt even though the notes were executed in M & M's name after the purported title transfer.
 
 
 8
 Petitioners make much of the concept of "substance over form." See Appellants' Brief at 9-10. Indeed, the true substance of a transaction should govern its tax effects, but the cases that turn on "substance over form" most often involve an effort by the government to look through a taxpayer fiction to determine the legitimate tax effects of a transaction. See, e.g., Higgins v. Smith, 308 U.S. 473, 477 (1940) (The government may "sustain or disregard the effect of the fiction as best serves the purposes of the tax statute."). The situation differs when it is the taxpayer, who voluntarily chooses the form of the transaction, attempting to reap the benefits of the chosen form but avoid the tax consequences. See Strick Corp. v. United States, 714 F.2d 1194, 1206-07 (3d Cir.1983), cert. denied, 466 U.S. 971 (1984); Commissioner v. Danielson, 378 F.2d 771, 774-75 (3d Cir.), cert. denied, 389 U.S. 858 (1967); Hamlin's Trust v. Commissioner, 209 F.2d 761, 765 (10th Cir.1954). A taxpayer may not enjoy the benefits from corporate organization and then expect the court to recast the transaction so that he also may enjoy the tax benefits of interest payments made on behalf of the corporation. See Crouch, 692 F.2d at 99-100. On the contrary, although a taxpayer is free to choose any desirable form, he "must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974). See also Crouch, 692 F.2d at 99-100 (citing National Alfalfa ). The dispositive issue, therefore, is whether Petitioners enjoyed the benefits of corporate organization in the purchase and renovation of the building. We review the tax court's finding on this point for clear error, as it is factual. See Commissioner v. Duberstein, 363 U.S. 278, 291 (1960).
 
 
 9
 In Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943), the Supreme Court clearly refused to disregard a corporate form in determining the tax consequences of a purportedly personal transaction:
 
 
 10
 The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. New Colonial Co. v. Helvering, 292 U.S. 435, 442; Deputy v. du Pont, 308 U.S. 488, 494. In Burnett v. Commonwealth Improvement Co., 287 U.S. 415, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages.
 
 
 11
 319 U.S. at 438-39. Quoting this exact language, and citing numerous cases, we have noted that Moline Properties "preclude[s] ignoring the corporate form when adoption of that form has served a business purpose." Crouch, 692 F.2d at 99 (citations omitted). In Crouch the taxpayer formed a corporation in order to finance a real estate venture but avoid the limitations of interest rates to individuals under state usury statutes. He made interest payments on behalf of the corporation and attempted to deduct the same under I.R.C. § 163(a) on his personal tax return. Like Petitioners here, he argued that the corporation did not serve a legitimate business purpose. We rejected this argument, holding that the avoidance of state usury restrictions was a valid business purpose under the Moline Properties test. Id. at 100. Thus, we refused to disregard the corporate form.
 
 
 12
 Our holding in Crouch indicates that the threshold for the Moline Properties business purpose test is low. Indeed, the language of Moline Properties suggests a low threshold: a business purpose behind a corporation may involve an effort to "serve the creator's personal or undisclosed convenience...." 319 U.S. at 439. As the Commissioner argues, our holding in Crouch follows from this language and squares with numerous other holdings. See, e.g., Ogiony v. Commissioner, 617 F.2d 14, 16 (2d Cir.) (circumvention of state usury statutes valid business purpose), cert. denied, 449 U.S. 900 (1980); Evans v. Commissioner, 557 F.2d 1095, 1099 (5th Cir.1977) (same); Strong v. Commissioner, 66 T.C. 12 (1976) (same), aff'd 553 F.2d 94 (2d Cir.1977). Cf. Britt v. United States, 431 F.2d 227, 237 (5th Cir.1970) (facilitation of transfer of partnership interests to children valid business purpose); Tomilson v. Miles, 316 F.2d 710, 711 (5th Cir.) (facilitation of conveyance of property valid business purpose), cert. denied, 375 U.S. 828 (1963); Commissioner v. State-Adams Corp., 283 F.2d 395 (2d Cir.1960) (avoidance of potential difficulties from death of beneficial owner valid business purpose), cert. denied, 365 U.S. 844 (1961); Vaughn v. United States, 3 Cl.Ct. 316 (1983) (avoidance of personal liability valid business purpose), aff'd, 740 F.2d 941 (Fed.Cir.1984).
 
 
 13
 In this case, the tax court found that Petitioner Mr. Munroe incorporated M & M for three valid reasons regarding the purchase of the building: (1) to facilitate proportional ownership between him and his son; (2) to avoid potential liability given the necessity of an extensive renovation; and (3) to avoid potential transactional difficulties resulting from his wife's history of mental illness, which, at one time, required institutional commitment. Munroe v. Commissioner, 61 T.C.M. (CCH) 1797 (1991). Clearly, these three reasons meet the low threshold of Moline Properties as articulated in Crouch, and given the record we cannot say that the court's findings are clearly erroneous.[4] Even assuming the contrary, holding the Petitioners to the chosen form of the transaction is consistent with the Commissioner's well-established authority to "sustain or disregard the effect of the fiction as best serves the purposes of the tax statute." Higgins v. Smith, 308 U.S. 473, 477; Strick Corp., 714 F.2d at 1206-07; Danielson, 378 F.2d at 774-75; Hamlin's Trust, 209 F.2d at 765.
 
 
 14
 Petitioners' final argument, that M & M transferred ownership of the building to Mr. Munroe in 1981, is equally unavailing. The tax court declined to attribute any significance to the purported title transfer, noting that Petitioner had testified that he purposefully did not record the now missing deed because he had reservations about his wife's continuing mental illness. Munroe, 61 T.C.M. (CCH) 1797. Considering that it is Petitioners' burden to establish the necessary factual basis for a § 163(a) interest deduction, see T.C.R. 142(a); Crouch, 692 F.2d at 99, we cannot say that the tax court's finding is clearly erroneous. Petitioners failed to produce sufficient evidence of a title transfer, whether by actual or constructive delivery.
 
 
 15
 II. The I.R.C. § 6651(a)(1) Additions to Tax.
 
 
 16
 Petitioners contest the imposition of § 6651(a)(1) additions to tax for failure to file timely returns for tax years 1982 through 1985, arguing that Mr. Munroe's personal problems constituted "reasonable cause" for failing to file. In order to avoid these additions to tax, a taxpayer must establish that his failure was "due to reasonable cause" and did not result from "willful neglect." United States v. Boyle, 469 U.S. 241, 245 (1985); Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir.1989). In essence, the taxpayer must establish that he exercised " 'ordinary business care and prudence in providing for payment of his tax liability' necessary to constitute 'reasonable cause.' " Jackson, 864 F.2d at 1527 (quoting Treas.Reg. § 301.6651-1(c)(1)). The tax court's finding that the elements necessary to establish reasonable cause were not present in this case is subject to a clearly erroneous standard of review. Jackson, 864 F.2d at 1527.[5]
 
 
 17
 From 1982 to 1985, Mr. Munroe apparently suffered from a variety problems, including three heart attacks, impaired mental abilities due to prescription drugs, bouts with alcoholism, various financial difficulties, the 1984 divorce and the continuous mental problems of Mrs. Munroe. We do not doubt the severity of these problems; however, we cannot find the tax court's determination clearly erroneous given its uncontested findings that Mr. Munroe had access to a public accountant, that he maintained a law practice and that he oversaw the renovation of the office building during the same period. Given these findings, we agree with the tax court that Mr. Munroe could have filed timely returns had he exercised ordinary business care and prudence.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, Jr., Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Petitioner-appellant Geraldine Munroe is involved in this case solely by virtue of the joint tax returns for tax years 1982 and 1983 filed with her former husband, petitioner-appellant Robert Munroe. The Munroes divorced in April 1984
 
 
 [2]
 Petitioners also challenge the § 6653(a)(1) additions for negligent underpayment; but we decline to consider the argument because it was not raised below. See Neu v. Grant, 548 F.2d 281, 286-87 (10th Cir.1977)
 
 
 [3]
 M & M executed the following notes at local financial institutions:
 $33,000.00, January 26, 1981, due July 25, 1981;
 $33,000.00, July 25, 1981, due January 21, 1982;
 $51,250.00, February 16, 1982, due February 20, 1983;
 $50,032.32, May 4, 1983, due April 25, 1990;
 $40,000.00, June 10, 1986, due June 10, 1996.
 I R. doc. 6, at 2-3 (stipulation of facts referencing attached exhibits).
 
 
 [4]
 Petitioners contend that the tax court's findings regarding the three business purposes are clearly erroneous. Regarding the first finding, they argue that the reason for facilitating proportional ownership disappeared in November 1981, when Mr. Munroe acquired his son's M & M shares after the son moved away. The building was purchased and two of the notes were executed, however, prior to this occurrence. The corporation therefore served its intended purpose, if even for a short time. Regarding the second finding, Petitioners contend that the reason for a shield from liability disappeared when the I-beam heavy construction phase of the project was completed. Again we note that this purpose was served at the beginning of the project. In any event, Petitioners have failed in their burden of proving when and if such protection was no longer needed. Petitioners concede that the final business purpose, avoiding difficulties resulting from Mrs. Munroe's mental illness, existed throughout the entire time period at issue
 
 
 [5]
 The legal issue regarding which factors may constitute reasonable cause is not at issue in this case. See Boyle, 469 U.S. at 245; Jackson, 864 F.2d at 1527. The parties agree that personal problems may amount to reasonable cause under the relevant legal standard. See e.g., Harris v. Commissioner, 28 T.C.M. (CCH) 272 (1969)