973 F.2d 1525
 23 Fed.R.Serv.3d 962
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate
capacity and in its capacity as Receiver for Indian Springs
State Bank, and in its corporate capacity and as manager for
the Federal Savings and Loan Insurance Corporation
Resolution Fund, Plaintiff-Appellee,
v.
Sammy G. DAILY, Defendant-Appellant.
 No. 91-3035.
 United States Court of Appeals,
Tenth Circuit.
 March 3, 1992.
Motion to Publish Nunc Pro Tunc Aug. 26, 1992.
 
 Michael C. Manning, James W. Howard of Morrison & Hecker, Phoenix, Ariz. and Scott T. Forland of Morrison & Hecker, Kansas City, Mo. (Ann S. DuRoss, Asst. Gen. Counsel, Colleen B. Bombardier, Sr. Counsel, and Gregory E. Gore, Counsel, F.D.I.C., Washington, D.C., of counsel), for plaintiff-appellee.
 Sammy George Daily, pro se.ORDER
 This matter is before the court on Proctor & Gamble Company's Motion to Publish the Order and Judgment filed March 3, 1992, 956 F.2d 277 (10th Cir.).
 The Motion to Publish is granted nunc pro tunc.
 Before MOORE, TACHA, and BRORBY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Defendant-appellant Sammy G. Daily[1] appeals from a default judgment in favor of Plaintiff-appellee Federal Deposit Insurance Corporation (FDIC), in its corporate capacity and in its capacity as receiver for Indian Springs State Bank, and in its corporate capacity and as manager for the Federal Savings and Loan Insurance Corporation Resolution Fund (FSLIC). The issues are whether the district court abused its discretion in entering the default judgment against Daily for failing to comply with discovery demands and court orders, and whether the FSLIC was entitled to a default judgment where it did not propound the discovery at issue. We conclude the district court did not abuse its discretion, and that the FSLIC was entitled to entry of the default judgment. Accordingly, we affirm the judgment.[2]
 
 
 2
 On April 5, 1985, the FDIC filed a complaint against numerous defendants, not including Sammy Daily, alleging violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-1968. The FDIC filed its First Amended Complaint on September 4, 1985, naming Sammy Daily as a defendant. The FDIC filed a Second Amended Complaint on August 6, 1987, adding the FSLIC as a plaintiff. The FDIC's theory was that Daily and others perpetrated a fraudulent scheme which resulted in losses to three financial institutions.
 
 
 3
 The FDIC served its First Set of Interrogatories and First Request for Production of Documents on Daily on May 28, 1987. Under Fed.R.Civ.P. 33(a) and 34(b), Daily had thirty days after service to respond. Daily moved for and was granted two extensions of time to respond. On July 28, 1987, Daily moved for a protective order. Under Kan.Dist.Ct.R. 210(c), the filing of a motion for a protective order stays the discovery at which the motion is directed pending order of the court. Daily withdrew the motion on September 24, 1987.
 
 
 4
 On August 6, 1987, the court stayed discovery for those defendants who were named in both the present civil action and a pending criminal action until the conclusion of the criminal trial. Sammy Daily was named as a defendant in both the present civil action and the criminal action. The criminal trial commenced on October 19 and concluded on December 28, 1987. Daily was found guilty of one count of conspiracy. He was sentenced on April 4, 1988.[3]
 
 
 5
 On February 29, 1988, the FDIC[4] moved to compel Daily to respond to discovery. R. III, doc. 730, Ex. E.[5] Daily represented that he had been working on the responses and requested until May 9, 1988, to respond. Daily did not respond by May 9, 1988, or at any other time in 1988. On December 30, 1988, the magistrate judge granted the FDIC's motion to compel and ordered Daily to respond within thirty days. Daily failed to do so.
 
 
 6
 On February 21, 1989, the FDIC and the FSLIC moved, pursuant to Fed.R.Civ.P. 37(b)(2)(C), for a default judgment based on Daily's failure to respond to discovery or comply with the court's December 30, 1988, order. On March 6, 1989, Daily served his responses to the FDIC's interrogatories. In response to eighty-six interrogatories Daily asserted the Fifth Amendment seventy-one times, and lack of sufficient knowledge fourteen times. In response to the Request for Production of Documents, Daily represented that the documents were available for inspection at his place of business or counsel's office, or were located at the Organized Crime Strike Force office. No documents were produced at that time.
 
 
 7
 On March 15, 1989, the court ordered Daily to produce at the FDIC's counsel's office by March 22, 1989, documents located at Daily's Hawaii office, at the offices of Daily's counsel, and at the Organized Crime Strike Force office in Kansas City; to identify which documents were responsive to which requests for production; and to explain in writing any failure to produce the documents. Daily moved for and was granted a five-day extension to comply.
 
 
 8
 On March 27, 1989, Daily produced eight boxes of documents. Daily had earlier represented that thirty boxes of documents would be produced. None of the documents located at the Organized Crime Strike Force or Daily's counsel's office were produced. Daily did not identify which documents were produced pursuant to which request for production. In response to thirty-four of forty requests for production, Daily stated that the documents were not available "except as they may be provided in response to other request/s herein, or are otherwise in the possession, custody or control of plaintiffs." R. IV, doc. 768, Ex. A.
 
 
 9
 The court granted the motion for a default judgment under Fed.R.Civ.P. 37(b), (d). It found that Daily's "failure to provide discovery was the result of a deliberate, dilatory course of conduct by the defendants' counsel for the defendants' benefit." R. IV, doc. 774 at 5. It rejected the argument that the delay was caused by inadvertence, relying on the fact that the FDIC filed a motion to compel in February 1988, Daily assured the court that responses would be forthcoming in May 1988, and the magistrate judge entered an order on December 30, 1988, compelling discovery. The court further observed that the responses provided were largely "non-responses" consisting of numerous assertions of the Fifth Amendment, inadequate knowledge,[6] and unavailability of documents.
 
 
 10
 Recognizing that a default judgment must be based on some fault on the part of or binding on the party, but that when counsel engages in deliberate, dilatory tactics for a client's benefit a default judgment may be warranted, Smith v. United States, 834 F.2d 166, 171 (10th Cir.1987), the court applied the factors set forth in Ocelot Oil Corp. v. Sparrow Industries, 847 F.2d 1458, 1465 (10th Cir.1988), to determine whether counsel's actions were strategic rather than merely inadvertent. These factors are: degree of actual prejudice to the opposing party; amount of interference with the judicial process; and culpability of the litigant.
 
 
 11
 As to the first Ocelot factor, the court found that Daily's strategy had prejudiced the FDIC and the FSLIC because discovery closed on March 31, 1989, but they did not have sufficient responses to their discovery requests to enable them to prepare a meritorious summary judgment motion, adequately prepare for trial, or adequately depose witnesses. As to the second factor, the court found that the strategy significantly interfered with the important role discovery plays in the adversarial system, and that Daily had ignored the court's order compelling discovery. Finally, as to the third factor, the court observed that no evidence conclusively indicated whether Daily or his counsel chose to utilize the tactics employed in the case, and the court could not state with certainty that Daily himself was culpable. However, because counsel's actions were the result of a tactical decision for Daily's benefit, the court, relying on Smith, 834 F.2d at 171, concluded that Daily was bound by counsel's actions. The court considered, but rejected, less severe sanctions because a tactical decision was made "to engage in conduct in contempt of or in utter indifference to the process by which litigation is resolved...." R. IV, doc. 774 at 9.
 
 
 12
 Federal R.Civ.P. 37(b)(2)(C) and 37(d) permit a court to enter a default judgment against a party who fails to obey an order to provide discovery or who fails to respond to interrogatories or requests for production. We review the imposition of sanctions for abuse of discretion under the totality of the circumstances. M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 872 (10th Cir.1987). A default judgment is a harsh sanction that will be imposed only when the failure to comply with discovery demands is the result of " 'wilfullness, bad faith, or [some] fault of petitioner' rather than inability to comply." Id. (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747 (1976) (quoting Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958))). A "willful failure" is an intentional failure rather than involuntary noncompliance. Id. at 872-73.
 
 
 13
 Daily first argues that the district court's decision rests on a factual error, specifically, that he failed to provide discovery for almost two years. Daily contends that discovery was stayed until December 30, 1988, except between September 24 and October 18, 1987, because 1) the order staying discovery pending completion of the criminal trial stayed discovery through sentencing on April 4, 1988; 2) Daily's March 30, 1988, response to the FDIC's motion to compel stayed discovery pending disposition of the motion; and 3) other unspecified motions for protective orders were pending until December 30, 1988.
 
 
 14
 In the district court, however, Daily argued only that discovery was stayed between July 28 and September 24, 1987, and between October 19, 1987, and January 1, 1988. R. IV, doc. 791 at 1; R. V, doc. 799 at 16. An appellate court generally will not consider issues raised for the first time on appeal. Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991). Daily has not shown that any of the exceptions to this general rule apply. We therefore do not address the issue.
 
 
 15
 We reject Daily's contention that his March 6, 1989, response to the request for production complied with the court's December 30, 1988, order. The response was untimely. Further, the December 30 order, as represented by Daily, directed that documents be produced at the location in the Requests for Production. That location was the FDIC's counsel's office. Only documents in the federal government's possession were ordered to be produced "where they are normally kept."
 
 
 16
 Daily next argues that the district court abused its discretion by basing its decision on his failure to produce documents in the possession of the Organized Crime Strike Force. He asserts that the Organized Crime Strike Force only had copies of documents and the court requested originals. The record contains an affidavit from Lloyd Monroe of the Organized Crime Strike Force stating that Monroe advised defense counsel that all documents obtained from Daily in the Strike Force's possession would be made available for inspection and copying upon request. However, defense counsel never followed up on the request. R. IV, doc. 768, Ex. D. The affidavit does not state that only copies were available, and Daily did not provide any other affidavit supporting this assertion. Thus, the record does not support Daily's claim that the Strike Force did not have documents that Daily should have produced.
 
 
 17
 Daily next contends that the district court improperly laid the blame for the delay on him rather than on his attorney. "If the fault lies with the attorneys, that is where the impact of sanction should be lodged." Mulvaney v. Rivair Flying Serv., Inc. (In re Baker), 744 F.2d 1438, 1442 (10th Cir.1984) (en banc), cert. denied, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). However, a client is bound by his lawyer's representation "when the lawyer (or the client) makes a tactical decision and his noncompliance with the court's directive is not a product of inadvertence." Smith, 834 F.2d at 171. A court must determine whether a course of conduct results from mere inattention by counsel or is a deliberate strategy. In making findings on the issue of fault, a court should consider the factors set forth in Ocelot, 847 F.2d at 1465.
 
 
 18
 Addressing the first and second Ocelot factors, Daily argues that the FDIC and the FSLIC's actions, rather than his own, caused the delays. Daily has not shown that any delays caused by the FDIC and the FSLIC actually prejudiced the FDIC, which is the relevant inquiry under Ocelot, 847 F.2d at 1465, or that the FDIC and the FSLIC disobeyed any court order or rule. In contrast, Daily failed to comply with the district court's December 30, 1988, order compelling discovery.
 
 
 19
 Addressing the third Ocelot factor, Daily argues that he assumed his counsel had timely complied with discovery based on a September 1, 1987, letter from counsel providing that responses to interrogatories will be sent out "in a timely manner sometime within the next few days." Appellant's App. Ex. A. Putting aside the problem that this letter should not be considered because it is not part of the record, Neu v. Grant, 548 F.2d 281, 286 (10th Cir.1977), the letter refers to Plaintiffs' Second Set of Interrogatories. The discovery at issue is Plaintiffs' First Set of Interrogatories. The letter does not assist Daily.
 
 
 20
 Daily asserts there is no evidence that he was aware of the delay in responding to the discovery demands because he was incarcerated between April 25, 1988, and January 17, 1990. The district court found that Daily was aware of counsel's actions, and therefore culpable, because Daily was incarcerated as a result of a criminal action arising from the same facts that gave rise to the present lawsuit, he testified at various trials, and he attended numerous depositions related to the instant litigation.
 
 
 21
 It is undisputed that Daily participated in his criminal trial. Further, Daily represents that he attended depositions in the present case. Appellant's Reply Brief at 15. We will not consider Daily's argument that he did not testify at any trial other than his own, id., because it is raised for the first time in Daily's reply brief, Mountain Fuel Supply v. Reliance Insurance Co., 933 F.2d 882, 887 (10th Cir.1991), and because it was not raised in the district court. Hicks, 928 F.2d at 970. We conclude the district court properly applied Ocelot to determine that sanctions against Daily were appropriate.
 
 
 22
 Daily criticizes the district court for not holding a hearing. Due process requires an opportunity to be heard upon adequate notice. Link v. Wabash R.R., 370 U.S. 626, 632, 82 S.Ct. 1386, 1389-90, 8 L.Ed.2d 734 (1962). A judgment imposing sanctions under Rule 37 in violation of the offending party's due process rights is void. Brown v. McCormick, 608 F.2d 410, 414 (10th Cir.1979). In another context we have held that due process requires notice and a right to respond before the sanctions of costs, expenses, or attorney's fees are imposed. The right to respond does not necessarily require an adversarial, evidentiary hearing, however. The sanction inquiry may be limited to the record. Braley v. Campbell, 832 F.2d 1504, 1514-15 (10th Cir.1987). The process due depends upon the severity of the considered sanctions. The concerns posed by a dismissal (or entry of a default judgment) are greater than those presented by the assessment of counsel fees against attorneys. G.J.B. & Assocs., Inc. v. Singleton, 913 F.2d 824, 830 (10th Cir.1990). We review whether a district court failed to provide adequate due process protections before imposing Fed.R.Civ.P. 11 sanctions under an abuse of discretion standard. Id.
 
 
 23
 We conclude that we should apply an abuse of discretion standard of review as well to the district court's decision not to hold an evidentiary hearing before imposing Rule 37 sanctions. We further conclude that Daily was provided with an adequate opportunity to respond. He filed two responses to the motion for a default judgment, a motion for reconsideration, and a reply to the response thereto. Further, Daily did not request an evidentiary hearing in any of the documents he filed that are included in the appellate record. See id. at 832 (due process violation may be waived). The district court did not abuse its discretion by failing to hold an evidentiary hearing before entering a default judgment.
 
 
 24
 Daily next contends that the district court was required to warn him that a default judgment was a possible sanction before entering the default judgment, relying on several Ninth Circuit decisions. See, e.g., United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co., 857 F.2d 600, 605 (9th Cir.1988) (district court's failure to warn parties that procedural lapse might result in judgment against them is a factor to consider in reviewing judgment entered as Rule 37(b)(2) sanction). The decisions of the Ninth Circuit are not binding on this circuit. United States v. Carson, 793 F.2d 1141, 1147 (10th Cir.), cert. denied, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986). Daily has not referred us to any decisions from this circuit holding that a district court has an obligation to warn a party specifically that a default judgment is a possible sanction before entering a default judgment. The district court's failure to warn Daily of the possibility of sanctions is of no consequence.
 
 
 25
 Daily's final contention is that the district court abused its discretion by entering a default judgment for the FSLIC where the FSLIC was not a party when the discovery at issue was propounded. Daily relies on the rule that sanctions imposed under Rule 37(b)(2) for violating an order compelling discovery must be specifically related to the particular claim at issue in the order. See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982).
 
 
 26
 Daily has not refuted the FDIC's assertion that the discovery at issue pertained to the FSLIC's claims and that production of the materials would have provided the FSLIC with most of the information needed to prosecute its action. R. III, doc. 730 at 12. Therefore, we presume that the December 30, 1988, order compelling discovery involved documents and responses relating to the FSLIC's claims.[7]
 
 
 27
 Daily also relies on Halaco Engineering Co. v. Costle, 843 F.2d 376, 381 (9th Cir.1988) (citations omitted), holding that "the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case.... There must be a nexus between the party's actionable conduct and the merits of his case." A nexus exists between Daily's failure to timely provide discovery and the merits of his defense against the FSLIC's claims because that discovery would have provided the FSLIC with most of what it needed to prosecute its action. We conclude that entry of a default judgment in favor of the FSLIC was not an abuse of discretion.[8]
 
 
 28
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 [1]
 A second defendant, Sammy Daily Realty, Inc., filed a notice of appeal from a default judgment entered as to it. FDIC v. Sammy Daily Realty, Inc., No. 91-3032. We dismissed that appeal for want of prosecution because the notice of appeal was signed by Sammy Daily, who is not an attorney, and no attorney had appeared for Sammy Daily Realty. See 10th Cir.R. 42.1. Thus, although Sammy Daily Realty was a party to the actions described herein, our decision applies only to Sammy Daily
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 We reversed the conviction and remanded for further proceedings in United States v. Daily, 921 F.2d 994 (10th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991)
 
 
 [4]
 The FSLIC did not join in the motion to compel
 
 
 [5]
 While the motion refers to "plaintiffs' Third Request for Production of Documents," we assume this was in error because the memorandum in support of the motion states that the Request for Production was served on Daily on May 28, 1987, and the clerk's docket sheet shows that only the First Request for Production was served on Daily that day
 
 
 [6]
 The court acknowledged that such responses are valid, but noted that there was no excuse for delaying nearly two years in giving them
 
 
 [7]
 The order is not part of the record on appeal
 
 
 [8]
 The FDIC requests attorney's fees for defending this appeal but provides no legal support for its request. We need not manufacture a party's argument for him. Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1513 (10th Cir.1990). We therefore deny the request